AMANDA CORSON, PLAINTIFF IN ERROR, v. ATLANTIC CITY RAILROAD COMPANY, DEFENDANT IN ERROR.

Argued March 12, 1912—Decided June 20, 1912.

1. Under normal conditions the existence of a worn path across railroad tracks to a station, without more, cannot be relied on as an invitation to intending passengers to use that path, so as to lay the railroad company under a duty of exercising care to make such pathway reasonably safe, so long as a sufficient means of access has been elsewhere provided by the company.
2. But where the passageway regularly provided by the company is habitually blocked just prior to train time by the very train that a passenger desires to take, and passengers are habitually forced by such practice to use the other pathway, it is open to a jury to infer that the railroad recognized the pathway across the tracks and invited intending passengers to use it at such times.

On error to the Supreme Court.

For the plaintiff in error, *Bleakly & Stockwell.*

For the defendant in error, *Lewis Starr.*

The opinion of the court was delivered by

PARKER, J.  This writ of error brings up a direction of verdict for the defendant at the circuit.  The plaintiff in attempting to reach the platform of defendant's station from a highway, walked across some railroad tracks and in so doing tripped on some signal wires near the ground and was injured. The principal question now is whether the existence of a legal invitation to plaintiff to take the path that she took was a question for the jury or for the court.

A short description of the physical features (a map would be better) is essential to an understanding of the point involved.  The place was Tuckahoe Junction, where the railroad of defendant running southerly from Camden forks, one branch diverging toward the south to Cape May; the other southeasterly at an acute angle toward Ocean City.  The station property is in the angle, and is bounded on the south by an east and west road over which ordinary access to the station is had, necessitating the crossing of a track for that purpose. From this road runs northerly, close to the easterly track of the Ocean City fork, another road adjoining the defendant's premises for about six hundred feet and then bearing off to the northeast.  This road leads to Marshallville as indicated by the map submitted in evidence.  In the absence of any short cut across the tracks an intending passenger from the direction of Marshallville must come down the last road southwestwardly until it strikes defendant's premises; thence southerly, parallel with and bordering on the Ocean City branch for six hundred feet to the cross road; thence westerly, along the same about sixty feet, crossing the Ocean City branch, and thence northerly, by pathways provided, to the station, some three hundred feet further and between the two sets of tracks.  If this description be roughly jotted down on paper it will at once be seen that a long detour is required of anyone coming from Marshallville or its direction, and as all the tracks and platforms were substantially on a level with the road and entirely unfenced and open, and as the platform extended well up into the angle of the tracks, at which point

the Marshallville road met the Ocean City branch, the temptation would be strong to cut across the track instead of going some hundreds of feet around by the road. Many had apparently yielded to this temptation, for there was, according to the evidence, a comparatively well-worn path across one track, then southerly between the tracks and beside some rods or pipes used to operate the signals, and around their ends across another track to the platform. Plaintiff followed this path, and going around the south end of the rods, which she saw, tripped over the wires, which she did not see, and sustained the injury for which she claimed damages.

Under normal conditions the existence of a worn path across railroad tracks to a station cannot be relied on as an invitation to use that path so as to make the railroad company responsible for injuries due to mere negligence, so long as there is a safe pathway provided for such access; and the fact that the pathway provided is less convenient than the other will make no difference in the rule. *Dieckmann* v. *Delaware, Lackawanna and Western Railroad,* 52 *Vroom* 460; *Delaware, Lackawanna and Western Railroad* v. *Trautwein,* 23 *Id.* 169; 7 *L. R. A.* 435; *Garrett* v. *Atlantic City, &c., R. R.,* 50 *Vroom* 127; *affirmed,* 52 *Id.* 570. So that if the access by the aforesaid east and west road had been unobstructed at the time of plaintiff's approach, the existence of the trodden path without further evidence of its recognition and holding out by the defendant as a means of access would not have sufficed as an invitation, but she would have been bound to go around by the road; and on her taking the short cut, the defendant would have owed her no duty except to abstain from willful injury, as she would be a trespasser or at best a mere licensee. *Phillips* v. *Library Co.,* 26 *Vroom* 307; see *Kubinak* v. *Lehigh Valley Railroad,* 50 *Id.* 438.

But there was evidence from which the jury might have found that conditions were not normal; and plaintiff's claim as set up in the declaration is not predicated wholly on the existence of the worn pathway as an invitation. The declaration charges, and there is evidence to support the claim, that

defendant instead of providing a safe approach via the cross road, blocked it with a train standing on one of the easterly or Ocean City tracks and thereby made it impossible for plaintiff to gain the station by the road and compelled her to take the beaten path for that purpose so that she tripped on the wires strung across that path. It appears that just to the south of the cross road and west of the Ocean City track is defendant's water tank, and that at the time plaintiff approached to take her train, that very train was lying across the track, the engine opposite the tank, taking water. There was also evidence of a custom that if it was time for the train to leave it would not back into the station for passengers, at least unless some were visible on the platform, but would start right out for Ocean City.

. The defendant claimed, and produced evidence to show, that at the time in question it was at least ten minutes after leaving time and that the conductor had looked for passengers at the station and seen that there were none. If so, we consider that the plaintiff was not justified in taking the short cut, which led back of the train across the wires. Her right to enter at all on the defendant's premises was for the purposes of buying a ticket and waiting for and boarding a train at the platform provided. But so far as she was concerned the train had (on the hypothesis that it was after leaving time) already left the station for Ocean City, and plaintiff's duty was to wait until the road was clear and then cross by it and await the next train.

But there was one aspect, and in our view only one, in which the evidence presented a jury question. The plaintiff denied that she was late and said that on the contrary she was in good time and that the train left on schedule after she had been injured and had been put aboard. There was further testimony that the train customarily took water prior to that trip and therefore customarily blocked the road so that intending passengers were forced to take the other means of reaching the station. If the jury believed this testimony they might well find that the defendant by cutting off the proper

means of access at and before train time and habitually forcing its patrons to use another way to reach its trains had adopted that other way and thereby invited its patrons to use it. In such case defendant would be under a duty to use proper care to make such means of access reasonably safe; and that a jury might infer negligence from the maintenance of wires placed so that pedestrians would trip over them, is too plain for comment. In this aspect of the case the plaintiff was entitled to have her claim submitted to the jury. She would not have been justified in attempting to board the train on the near side where it was standing. *Kriwinski* v. *Pennsylvania Railroad Co.*, 36 *Vroom* 392. But it could not be said as a court question that with sufficient time remaining before the scheduled departure of the train, she was required to stand helplessly by and watch it go out, when (as the jury might have found) the company had recognized and encouraged the use of the beaten path.

It is suggested that she was guilty of contributory negligence in not seeing and avoiding the wires, as it was broad daylight and they were in plain sight. But this was essentially a jury question.

The judgment will be reversed to the end that a *venire de novo* issue.

*For affirmance*—None.

*For reversal*—THE CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, VOORHEES, MINTURN, KALISCH, BOGERT, VREDENBURGH, VROOM, CONGDON, WHITE, TREACY, JJ. 15.